2021 IL App (1st) 181930-U
No. 1-18-1930
Order filed May 17, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF DANIEL MCCORMACK | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No 09 CR 80006 |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| Daniel McCormack, | ) | Dennis J. Porter, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

. JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

**ORDER**

¶1 *Held*: Reversed trial court's order of commitment under the Sexually Violent Persons Commitment Act where the State failed to prove McCormack's mental disorder renders him substantially likely to reoffend.

¶2 Daniel McCormack pled guilty to a series of sexual assault charges and received concurrent prison terms for each. Before his release from custody at the Illinois Department of Corrections (IDOC), the State had him evaluated under the Sexually Violent Persons Commitment Act. See

725 ILCS 207/1 *et seq.* (West 2020). The State's expert, Dr. Angelique Stanislaus, testified that McCormack met the criteria for civil commitment under the Act. McCormack's expert, Dr. Raymond Wood, found that McCormack did not meet the criteria for commitment under the Act relying on nearly identical information to Stanislaus. The trial court found McCormack qualified as a sexually violent person beyond a reasonable doubt and ordered him committed to a secure treatment facility.

¶3 McCormack now argues that the State failed to prove he qualifies as a sexually violent person. He challenges the State's proof on two grounds: the State failed to prove that any mental disorder McCormack may have (i) creates a risk he may reoffend and (ii) creates a substantial probability that McCormack will commit future acts of sexual violence even if his disorder creates some risk he may reoffend. See *id.* §15(b) (setting out elements State must allege and prove). We agree with McCormack's latter argument and reverse the trial court's order of commitment.

¶4                                    Background

¶5 At a bench trial, the State called Stanislaus, who explained her education, qualifications, and experience evaluating respondents under the Act. The trial court qualified her as an expert in forensic psychiatry with a focus on evaluating, diagnosing, and assessing the risk of sexually violent persons.

¶6 Stanislaus evaluated McCormack in 2009 and updated her evaluations in 2011 and 2013. She reviewed and relied on a host of documentary evidence, including investigative reports and police reports related to the underlying criminal conduct. She also reviewed IDOC records and Quackenbush's report of his initial evaluation of McCormack. As part of her initial evaluation in 2009, Stanislaus went to Jacksonville Correctional Center to meet with McCormack who "stated that, in a very pleasant manner, that he *** cannot participate in the interview because he had civil

2

litigation pending." Before she left, however, McCormack told Stanislaus that he had participated in substance abuse treatment while incarcerated.

¶7 In 2011, Stanislaus reviewed more than 6,000 pages of documents from the Office of Professional Responsibility of the Archdiocese of Chicago. The documents contained "more allegations from several other *** underage males." Stanislaus also reviewed additional investigative reports related to the underlying offenses, DHS treatment records, and other records of psychological treatment. Stanislaus made no effort to interview McCormack in 2011 because "he was given an opportunity the first time." She explained that it is a generally accepted practice in her field to update evaluations based solely on documentary records. In 2013 Stanislaus updated her report because the diagnostic manual changed from the DSM-4-TR to the DSM-5. She did not evaluate any additional records, simply updating the 2011 report to reflect new diagnostic language.

¶8 In all three reports, Stanislaus concluded McCormack met the criteria for commitment under the Act.

¶9 Stanislaus also testified to the details of the offenses leading to McCormack's guilty pleas. We do not recount those details here because, for this appeal, the parties do not dispute that McCormack was convicted of an offense that qualifies as a "sexually violent offense" under the Act. For now it is enough to say that all five offenses involved minor male victims who knew McCormack as either a teacher, coach, or priest.

¶10 To complete her evaluation, Stanislaus consulted the "authoritative text" on the diagnosis of mental illness or disorder, the DSM-5. She concluded within a reasonable degree of psychiatric certainty that McCormack had "pedophilic disorder, sexually attracted to males." Stanislaus explained the criteria for pedophilic disorder and compared those criteria to McCormack's

3

criminal behavior. Stanislaus acknowledged that McCormack had not committed any new sexual offenses since 2006 but explained that "[i]f you have a deviant sexual interest in boys, it is pretty present, pretty much throughout your life." She also noted that McCormack's pedophilic disorder was not likely to have changed because he had not participated in sex offender treatment.

¶11 Stanislaus explained that pedophilic disorder affected McCormack's ability to control his sexually violent behavior and pointed to his pattern of reoffending even after he came under supervision due to complaints about his inappropriate conduct.

¶12 Based on other diagnostic instruments, Stanislaus concluded McCormack had a statistically "average risk" of reoffending. Looking then to factors unique to McCormack, she found his long-term preference for boys in the prepubescent age group to be a risk factor. She also included "the presence of emotional congruence with children," meaning McCormack showed he felt "much more comfortable interacting with children" rather than adults. Stanislaus considered McCormack's "sexual preoccupation" based on his actions taken with multiple victims and his willingness to touch his victims even in public places inappropriately. As mentioned, Stanislaus considered McCormack's willingness to reoffend even after being told he was under supervision. Stanislaus found indications that McCormack engaged in "sexualized coping" by increasing the pace of his offenses when under pressure and abused his position of power as a priest to abuse his victims. Finally, Stanislaus found McCormack's lack of an intimate relationship contributed to his risk of reoffending.

¶13 After considering all of the statistical instruments and factors unique to McCormack, Stanislaus concluded that reoffending was "substantially probable, meaning much more likely than not."

¶14    McCormack called Dr. Raymond Wood to testify. Like Stanislaus, the court qualified Wood as an expert in sex offender treatment and evaluation, including risk assessment and diagnosis.

¶15    Wood evaluated McCormack in 2010. He reviewed a report from IDOC evaluator Dr. Ray Quackenbush, who had initially found McCormack did not satisfy the criteria of a sexually violent person. Wood then reviewed Stanislaus's first report. He described Quackenbush's report as a non-referral meaning that he had determined McCormack was not a sexually violent person "either because there was not a mental disorder or the element of dangerousness was absent." Wood described Stanislaus's first report as "a second opinion in light of Dr. Quackenbush's non-referral." Like with Stanislaus, McCormack declined to participate in an interview with Wood.

¶16    Wood, again agreeing with Stanislaus, diagnosed McCormack with "pedophilic disorder, attracted to males." Wood agreed that pedophilia is a chronic condition "for which one cannot say it's in remission." He also included a diagnosis for non-specified personality disorder with "antisocial features."

¶17    To determine whether McCormack would engage in future acts of sexual violence, Wood scored two "actuarial instruments," which use sets of variables to "make sufficiently accurate predictions about an event of interest." One of the instruments was the same used by Stanislaus—the Static-99R—and based on that, Wood put McCormack in the "low risk" category for risk to reoffend (though he gave McCormack the same numerical score as Stanislaus did). The recidivism rate for people in that category was 12% over 5 years and 18% over 10 years. Wood explained that, had his evaluation been based only on the Static-99, he would find that McCormack was not substantially likely to reoffend.

5

¶18    Like Stanislaus, Wood considered the actuarial instruments to be a baseline and then looked at other factors specific to McCormack. But Wood explained he would disregard factors that were already accounted for in the actuarial assessments. Considering those other factors together with the actuarial assessments, Wood still concluded it was not substantially likely that McCormack would engage in acts of sexual violence.

¶19    In 2011, Wood received additional information from the Attorney General showing "approximately a dozen" other allegations revealed against McCormack as a result of civil lawsuits since his criminal convictions. Wood redid his risk assessments based on the new information, and McCormack's scores did not change. Wood remained convinced that McCormack did was not substantially likely to engage in future acts of sexual violence. In particular, he did not find the new allegations changed his assessment because the actions that led to the allegations occurred contemporaneously with the actions leading to McCormack's criminal convictions.

¶20    Wood did a final evaluation in 2017. At that time, he still diagnosed McCormack with the pedophilic disorder. Wood explained several changes in the Static-99R in the intervening years but McCormack received the same score which put him in the "average" risk group. Wood also used a second assessment tool known as the VRAG-R, on which McCormack scored in the 16th percentile of likelihood to reoffend. This, in Wood's opinion, indicated a "below average" risk of reoffending. It put McCormack at a 12% chance after 5 years and a "low 20 percent" chance after 12 years.

¶21    Ultimately, "after looking at the actuarial scores, additional risk factors, and protective factors, it was still [Wood's] opinion it was not substantially probable that [McCormack] would reoffend."

¶22 After hearing argument the trial court first commented on the unusual amount of agreement between the parties as to the operative facts. The court concluded that each expert witness gave "what they feel to be their best judgment based upon their training" and that this case is "not a matter of credibility." Instead, the court classified the dispute as involving the degree to which each expert relied on factors outside the actuarial assessments.

¶23 On that score, the trial court found McCormack has a preoccupation with sex, is sexually attracted to children, has a personality disorder, has "self-regulation problems," and has not received any treatment. The court found each of these factors "pushes [McCormack] up the scale" so that there was "no reasonable doubt that there is a substantial probability that [he] will engage in future acts of sexual violence." With those findings the trial court found McCormack to be a sexually violent person. The court ordered McCormack committed to a secure treatment facility.

¶24                                     Analysis

¶25 To justify committing McCormack after the term of his incarceration in IDOC ended, the State had to prove three elements beyond a reasonable doubt: (i) McCormack's conviction was based on a sexually violent offense, (ii) McCormack has a mental disorder, and (iii) his mental disorder makes it "substantially probable" that he will engage in future acts of sexual violence. *In re Commitment of Fields*, 2014 IL 115542, ¶ 20 (citing 725 ILCS 207/5(f)). McCormack does not dispute, and the evidence shows, in five cases he was convicted of sexually violent offenses— aggravated criminal sexual abuse, an offense enumerated in the Act as a sexually violent offense. 725 ILCS 207/5(e) (citing 720 ILCS 5/11-1.60). McCormack also does not dispute, and again the evidence shows, he has a mental disorder. Both Stanislaus and Wood testified McCormack has "pedophilic disorder, attracted to males."

7

¶26 McCormack disputes only the third element—whether his mental disorder makes it substantially probable that he will engage in future acts of sexual violence. His fight has two fronts. First, he argues that the State failed to prove any causal link between his mental disorder and his likelihood to reoffend. Alternatively, he argues even if there is a link, it does not rise to a substantial probability. The State responds that the trial judge, as factfinder, had the sole responsibility to determine if McCormack was substantially likely to reoffend, and that Stanislaus amply supported her conclusion that he was. We disagree and find Stanislaus's conclusory or contradictory opinions insufficient to carry the State's burden to prove McCormack was a sexually violent person beyond a reasonable doubt.

¶27 As with reasonable doubt challenges in the context of criminal cases, when reviewing the sufficiency of the evidence to prove a respondent is a sexually violent person, we ask whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the elements of the Act proven beyond a reasonable doubt. *Fields*, 2014 IL 115542, ¶ 20. We will not second guess the factfinder's assessment of witness credibility. *Id.*, ¶ 27. And the trial court found this case is "not a matter of credibility."

¶28 The trial court also did not rely on the statistical instruments in finding McCormack to be a sexually violent person. Both experts testified that McCormack was at a low statistical risk to reoffend. Stanislaus scored McCormack a "3" on the Static 99-R risk assessment tool, which is "average risk, and that can be translated into little risk." Wood also used the Static 99-R and gave McCormack the same score and quantified the risk as percentages: an 8-10% risk of recidivism after five years and a 22% risk of recidivism after 10 years. Wood then used an additional instrument and found a similar risk: a 12% chance of reoffending after 5 years and a "low twenty percent" chance of reoffending after 12 years. We have previously declined to put a number on the

8

"substantial" risk of reoffending. *E.g. In re Commitment of Gavin*, 2019 IL App (1st) 180881, ¶¶ 46-48. We do not depart from that precedent. Still, the statistical instruments alone do not prove beyond a reasonable doubt that McCormack was substantially likely to reoffend.

¶29    Instead, the trial court found McCormack substantially likely to reoffend based on the presence of dynamic risk factors, including (i) his "preoccupation with sex," (ii) his "anti-social personality disorder," (iii) his "self regulation problems," (iv) he "did not learn from getting caught," (v) the lack of evidence of treatment, (vi) his "grooming practices," and (vii) his "emotional congruence with children." Stanislaus undoubtedly testified to the existence of some of these risk factors. We must determine, however, not whether these factors are present but whether the State proved that they make McCormack *substantially* likely to violently reoffend.

¶30    We break down the failure of proof in this case into three main categories: (i) factors the trial court relied on that either contradict or misapply the testimony; (ii) factors for which the State failed to elicit testimony about why or to what extent those factors increase the risk of violent reoffending; and (iii) factors Stanislaus relied on that do not stand up to scrutiny either on their own or after cross-examination.

¶31                    *Misapplied or Erroneous Factors*

¶32    The State's expert rejected outright at least one of the risk factors on which the trial court relied. The trial court found McCormack had self-regulation problems. Stanislaus testified that "sexual self-regulation" can be a dynamic risk factor, and she initially included it in her 2011 report for McCormack. But she admitted she "do[es] not know how [McCormack] sexually self regulates himself right now," and she disavowed including this factor in her 2011 report because it is "inaccurate."

9

¶33    We also find the trial court misapplied Stanislaus's explanation about McCormack's failure to seek treatment. Stanislaus testified that McCormack did not participate in sex offender treatment. But she also explained that participation in treatment is a protective factor that lowers risk; she did not testify that lack of treatment was a dynamic factor that increased risk. So although McCormack's risk does not decrease based on treatment, the trial court erred in finding that the lack of treatment was a factor increasing his risk to reoffend.

¶34                                *Unexplained Factors*

¶35    Stanislaus also testified that after the church placed McCormack under supervision he continued to engage in sexual behaviors with minors, showing a lack of cooperation with supervision (what the trial court labeled an inability to learn from getting caught). The State did not ask Stanislaus to explain why or to what extent this factor increased McCormack's risk of violently reoffending. The State similarly did not ask Stanislaus to explain McCormack's "sexual preoccupation." Stanislaus testified to the existence of this factor, which McCormack demonstrated by engaging in multiple sexual acts, at least one of which involved touching a boy in public. Like the trial court, we are left to guess why or how this factor increases McCormack's risk of violently reoffending.

¶36                                *Disproven Factors*

¶37    Stanislaus testified that McCormack has emotional congruence with children as shown by his tendency to spend time with young boys and take them on outings to baseball games, shopping, and other sporting and social events. But, on cross-examination, Stanislaus admitted that she acquired this picture of McCormack only from "the young boys reporting going to these games or [ ] restaurants." She did not contact anyone else in McCormack's life to determine the proportion of time he spent with children or whether he also engaged in similar activities with adults.

¶38     We cannot accept this factor as evidence that McCormack is substantially likely to reoffend. Of course it will look like McCormack has emotional congruence with children when the only information used to evaluate him is self-reporting from children with whom we know he spent time. But the State did not elicit testimony that McCormack spent an outsized proportion of his time with children generally. We do not say this to minimize the inappropriate behavior McCormack engaged in when he was around children. Rather, nothing in the evidence indicates he spent a disproportionate amount of time with children relative to the rest of his social interactions.

¶39     Though the trial court overlooked McCormack's membership in the clergy as a factor in finding him a sexually violent person, we cannot ignore Stanislaus's vacillating testimony on this factor. On direct examination she explained that McCormack's former employment as a priest evinced a "special role in the community" that led to a "misuse of power." On cross-examination, however, she testified that McCormack's former membership in the clergy was not "a risk factor one way or the other to sexually reoffend."

¶40     We acknowledge that Wood testified to the presence of many of the same dynamic risk factors that Stanislaus identified. He acknowledged a greater-than-zero risk that McCormack would reoffend but found it was not substantially likely that he would do so. Stanislaus never adequately explained her contrary conclusion. As part of her cross-examination, Stanislaus explained that she could not quantify an increase in McCormack's risk to reoffend based on the presence of any particular dynamic risk factor. Instead, she described a "layering effect" caused by the presence of multiple factors that "increases" the risk of reoffending. She also said the presence of dynamic factors "elevates" the risk from "average" to "above-average" with no attempt to quantify the increase or elevation. We acknowledge Stanislaus's explanation that the research

has been unable to quantify the exact percentage increase in likelihood to reoffend caused by each dynamic risk factor. At the same time, we cannot accept generic descriptions of "increase" and "elevate" without an attempt to explain or quantify the increase, especially when the State had to prove *beyond a reasonable doubt* that a *substantial* likelihood existed that McCormack would engage in future acts of sexual violence.

¶41    McCormack asks us to account for several other aspects of Stanislaus's testimony that he argues call her conclusions into question. He argues that Stanislaus was less credible because the State did not retain her until after an IDOC evaluator found McCormack did not meet the requirements for commitment under the Act. He also argues that the age of Stanislaus's evaluation (2011) versus Wood's evaluation (2017) renders Stanislaus's evaluation unworthy of belief. We express no opinion on these arguments as they are at the core of credibility determinations better left to the trial court. See *Fields*, 2014 IL 115542, ¶ 27.

¶42    In that vein, State urges us not to retry McCormack as it is not our role to substitute our own judgment for that of the trial court. *People v. Murray*, 2019 IL 123289, ¶ 19. *Murray,* which the State cites, also reminds us that "determinations by the trier of fact are entitled to deference [but] they are not conclusive." *Id.* Essential elements that the State must prove "cannot be inferred but must be established." *Id.*, ¶ 28. For the reasons we explained, the State left too much to inference when questioning Stanislaus. We agree there is a probability that McCormack's mental disorder could cause him to reoffend, but Stanislaus failed to offer an explanation as to why the risk is "substantial." Even taking the evidence in light most favorable to the State, it fails to prove beyond a reasonable doubt that McCormack is a sexually violent person as defined in the Act.

¶43    McCormack also challenges the denial of his motion to dismiss the State's petition. He argues the State's petition was defeated by "affirmative matter" in that the Act did not allow the

State to obtain its own evaluator after IDOC found he did not meet the criteria for commitment under the Act. Because the State's evidence was insufficient, we need not reach that argument.

¶44　　Reversed.